# WILLIAMS *v.* WILLIAMS.

Under the evidence in the case it was not error to grant a nonsuit.
          SEPTEMBER 12, 1916.

Libel for divorce. Before Judge Charlton. Chatham superior court. April 22, 1915.

W. G. Williams brought a libel for divorce against Sallie Williams, alleging, that petitioner and defendant intermarried on the 22d of May, 1903; that shortly after the marriage the defendant

deserted and abandoned petitioner; that since that time his wife has lived separate and apart from him; and that this desertion has continued for more than three years prior to the filing of the suit. After the evidence of the plaintiff was submitted at the second hearing, the court granted a nonsuit, and to this order the plaintiff excepted.

According to the testimony of the plaintiff in his own behalf, the parties were married at a magistrate's office, and after the ceremony "she went one way and I went the other. We have never lived together since that time. About a year and a half after that, upon advice of my father, I went to my wife and asked her to come and live with me at my father's house, which was my home and the only home I have ever had. When I offered her my father's home and told her that I wanted her to come and live with me as my wife, she refused to come, and said she would not live with me. Some years after this she filed suit against me for alimony for the support of herself and child, and ever since that time I have paid her alimony . . I earn $100 a month. At the time I married her I was 21 years old and earned $25 a month. After the ceremony was performed in the magistrate's court we had nothing to do with each other, except that she asked me for money to support her, and I gave her money from time to time for about eighteen months. She did not ask me to live with her. I saved my money and paid it on account of the purchase of my father's house. As I had to pay her money for herself and her child, my father thought that we could save money by having her, and upon my father's advice I went to where she was living and asked her to come and live with me at my father's home. She refused. We have never lived together as man and wife during the twelve years we were married. . . One time I fell behind paying alimony to my wife, but the reason was I was sick in the hospital and had heavy expenses. . . I have always lived with my father and mother, and their home is my home, and I am still living with them. I have not again asked her to live with me, because I thought it was unnecessary to keep on asking her to come when she flatly refused to live with me. I am not willing to live with my wife now, and have not been willing to live with her, or have her live with me, for some time. I never offered to live with her except on that one occasion."

A letter from the plaintiff to defendant was read in evidence, which was as follows:

"Savannah, Ga., Sept. 11, 1903.

"Mrs. Sallie Baker Williams: Yours of Sept. 8th received, and contents noted. I least expected a letter from you, as you said in your former, "no more black and white for you." As far as being in touch of each other it suits me best; for I am as near and dear to you as I ever care to get. You have certainly told unwavering falsehoods on me, and you have done everything you thought degrading to wreck me, despite all the favors I done for you; but mark well it's all ahead of you, and in a greater hand than the law and any of its executors. If I've wronged you, I will meet it too, and am perfectly willing to resign to my fate. I may be guilty of what you say I am; but you will admit you've wronged me before 'Justice;' yes, you, your sister and friend. You may have been forced to take such steps after having related your side of the story to your friends and well-wishers, but I am sure they have advised you what they themselves would not do; and if they could have heard my end of the case, they would have seen where the matter could have been adjusted in an easier way. I have explained circumstances to you before you took steps to this disgraceful end, but you were determined to have me since you first met me; and that at any cost. I could tell from your action on first meeting, and from others which I need not tell now; for least did I think you'd get it at such cost. I was, and am, willing to do anything I possibly could, despite all I knew of you, save one, and that you know, for I've told you. The law I know is binding, but there's no law more forceable than one's determination. I have a conscience, and I know I'm a Christian, and by these I'll be guided. You will have no trouble in me doing the right thing as far as I'm able—provided the child be mine; but to live with you a day I will never as long as life lasts. I must actually tell you, from the mean and low manner in which you treated me, and the deadly threats your mother and sister made me, in the presence of others, I would consider my life in danger to be around any of you. I am willing to do just what I was before you prosecuted me, and that was anything as far as I was able, but marry you; but since you have forced me to marry you, I think, for the peace and happiness of both, we had better, and must, be apart. Where

there's no love there can be no happiness. Still you have my sympathy as a Christian, my support as a father of the child, if it's mine, and my name by law. Yet, I am,

Your miserable husband.

"P. S. I don't mean no insolence nor contempt, but simply want to express fully my feelings about the matter. I am not in a passion either, neither am I, like you, afraid of black and white; they can only speak what you think, and if your thoughts be disrespectful, you have need to fear writing them."

G. W. Williams, the father of the plaintiff, gave testimony substantially the same as that of his son.

*Oliver & Oliver* and *W. Spencer Connerat,* for plaintiff.

*Osborne, Lawrence & Abrahams,* for defendant.

BECK, J. (After stating the foregoing facts.) We are of the opinion that the court did not err in granting a nonsuit in this case. The plaintiff's own testimony shows that for some reason or other he and his wife separated at the magistrate's office, where they were married, immediately after the ceremony. Clearly he did not intend or wish her to go home with him at that time. She remained away eighteen months before he made the proposal that she live with him at his father's home; and, according to his own testimony, he made this proposal for reasons of economy,—purely on the ground that it would be cheaper to support her at his father's house than it would be separately. Under the evidence submitted, there was no duty on the wife to accept such proposal, and her declination to accept it did not amount to desertion; and the allegation of willful desertion for three years from petitioner was not sustained. A verdict for divorce upon the grounds alleged would have been unauthorized by the evidence.

*Judgment affirmed. By five Justices, all concurring.*